Daniel B. Olmos (SBN: 235319)

**NOLAN BARTON OLMOS LLP**

600 University Avenue
Palo Alto | CA | 94301
T 650.326.2980 | F 650.326.9704

Attorney for Defendant
Tyler Shayne Nelson

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TYLER SHAYNE NELSON,<br><br>Defendant. | Case No. 2:19-cr-00185 MCE<br><br>**SENTENCING MEMORANDUM AND REQUEST TO CORRECT PRESENTENCE REPORT**<br><br>Date: September 30, 2021<br>Time: 10:00 a.m.<br>Judge: Hon. Morrison C. England, Jr. |

Defendant Tyler Shayne Nelson, through undersigned counsel, respectfully submits this Sentencing Memorandum and Request to Correct Presentence Report to assist the Court with respect to the September 30, 2021, sentencing hearing in this case.

On May 27, 2021, Mr. Nelson pled guilty to Count One of the Indictment charging him with violating 18 U.S.C. § 2251(a) (sexual exploitation of a child). The basis of the guilty plea was a text message string with a minor victim from May 2018, during which Mr. Nelson asked for, and received, pictures of the victim's genitalia. There is no evidence made available to the defense that Mr. Nelson ever met or otherwise had personal contact with the minor victim or any other potential victim.

Pursuant to the plea agreement, the parties stipulated to a Sentencing Guidelines range of 180 to 210 months,[1] corresponding to a Total Offense Level of 35, and they agreed not to seek or argue in support of any other specific offense characteristics, adjustments, or cross references.  The parties also agreed not to seek any departures or variances.  The government agreed to seek the low end of the Guidelines range, or 180 months, which is the mandatory minimum prison sentence for a violation of § 2251(a).

I. **Objections/Requests to Correct the Presentence Report**

Mr. Nelson requests the correction of the Final Presentence Report in several respects, all of which he raised in his September 1, 2021, written Objections to the Draft Presentence Report.

Page 4, paragraph 3:

Mr. Nelson objects to the inclusion of this entire paragraph under "Pretrial Adjustment."  The note allegedly received by deputies at the Sacramento Main Jail is anonymous, and refers to "drawings depicting child pornography, rape, bestiality, and other emotionally anguishing topics."  However, it does not appear that anything the jail personnel found during a subsequent search of Mr. Nelson's cell actually contained any contraband, and certainly not contraband of the type described in the purported anonymous note.  This entire paragraph is based upon a note that cannot be verified, is unnecessary, and is unduly prejudicial to Mr. Nelson.

Pages 9-10, paragraph 29:

Mr. Nelson objects to the Chapter Four five-level enhancement pursuant to USSG §4B1.5(b)(1) for a "pattern of activity involving prohibited sexual conduct."  The basis of this "pattern" is the receipt of two images from the same victim within the span of three minutes, during a single, continuous Internet chat.  This is properly considered a single course of conduct, rather than prohibited sexual conduct "on at least two separate occasions."  *See, e.g., United States v. Telles*, 6 F.4th 1086, 1098 (9th Cir. 2021) (holding that, although the Ninth Circuit has "not yet set forth a definition of 'separate occasions,'" the

---

[1] The Sentencing Guidelines range for a Total Offense Level 35 is actually 168 to 210 months, but the mandatory minimum sentence is 180 months.

district court did not err by holding that the §4B1.5(b)(1) enhancement applied where the defendant sexually assaulted a single victim on two different nights at two different locations).

Moreover, where, as here, a sentencing enhancement has a disproportionate impact on the length of the sentence, the Court should apply a heightened standard of proof in determining whether the enhancement is appropriate. *See, e.g., United States v. Hymas*, 780 F.3d 1285, 1289-90 (9th Cir. 2015).

Page 10, paragraph 32:

Due to Mr. Nelson's objection to the five-level enhancement under §4B1.5(b)(1), the total offense level should be 35 as agreed to by the parties, not 40.

Page 17, paragraph 75:

Mr. Nelson objects to the paragraph to the extent it concludes that he is not indigent. By any reasonable measure, Mr. Nelson is indigent, and he has been found to be indigent by the Court.

Page 17, paragraph 77:

Mr. Nelson objects to the Guidelines Provisions calculated here, because he objects to the five-level enhancement pursuant to USSG §4B1.5(b)(1) for a "pattern of activity involving prohibited sexual conduct."

**II.     18 U.S.C. § 3553(a)**

A. Mr. Nelson's Background

Mr. Nelson is 28 years old, and was born and raised in the Sacramento area where he has lived his entire life. When Mr. Nelson was just five years old, Mr. Nelson's mother, without informing Mr. Nelson's father, unexpectedly took him to Texas, and subsequently informed Mr. Nelson's father that she did not intend to return to California with their son. Mr. Nelson's father was in the Navy at the time, and it took several months of litigation to convince Mr. Nelson's mother to return him home.

Mr. Nelson's mother thereafter stayed in Texas, and Mr. Nelson would fly to visit her periodically during his elementary school years. When Mr. Nelson was in middle school, he begged his mother to visit him in California, but she refused – she had not been to California to visit him once since her abrupt

departure years before. Once Mr. Nelson's mother refused to visit him, Mr. Nelson cut off contact with her, and he did not re-establish contact with his mother until he was incarcerated as a result of this case.

Mr. Nelson's father remarried when Mr. Nelson was approximately seven years old, and he considers his stepmother to be his true mother figure. In addition, Mr. Nelson's stepmother had a younger sibling whom Mr. Nelson admired and looked up to as an older brother. Mr. Nelson had trouble sustaining friendships as a youngster, and he considered his step-uncle to be his best and one true friend. Tragically, when Mr. Nelson was in the eleventh grade, his step-uncle, then 22 years old and in college at San Diego State, died unexpectedly while on a foreign exchange program in Spain. The circumstances surrounding Mr. Nelson's step-uncle's death remain unclear – Mr. Nelson's memory is that he was murdered, although a news article from the time suggests that the death was accidental. *See* PSR ¶ 53.

The unexpected and unexplained death impacted Mr. Nelson significantly. He became even more socially and emotionally withdrawn, and started acting out in school. He also began abusing narcotics, and did so up until his arrest in this case. As noted in the PSR, Mr. Nelson suffered at least eleven class suspensions during his eleventh and twelfth grade years, and he ultimately left Folsom High School far short of graduation credits. The next fall, he enrolled in an adult continuing education program through the school district and was finally able to graduate.

Over the next five years, Mr. Nelson continued to reside with his father and stepmother in Rancho Cordova, working at various fast food restaurants but never lasting more than one year in any given job. Mr. Nelson's social and emotional isolation continued into his adult years, and he reports long periods of deep depression. He was treated briefly for depression in high school, but regrettably did not seek out professional treatment as an adult, instead self-medicating with drugs and alcohol. Mr. Nelson has been placed on suicide watch at least once during his incarceration at the Sacramento County Main Jail, and a review of the digital media in this case reveals numerous messages wherein Mr. Nelson expresses thoughts of self-harm and suicide going back several years before the conduct giving rise to this case.

Mr. Nelson is amenable to treatment, and requests that the Court recommend placement in a Bureau of Prisons facility close to Northern California that has specific treatment programs for sexual

offenders.  Further, as recommended by the Probation Officer, Mr. Nelson is eager to participate in the Residential Drug Abuse Treatment Program (RDAP) along with sex offender treatment in order to gain access to tools to prevent any recurrence of the conduct giving rise to this case.

B.  Section 3553(a) Factors

As this Court is well aware, the sentence it imposes for Mr. Nelson must be "sufficient, but not greater than necessary" to comply with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a). The seven factors courts are required to consider are, in summary:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;
2. The need for the sentence to reflect the seriousness of the crime, afford adequate deterrence to criminal conduct, protect the public from the defendant, and provide the defendant with necessary training and treatment;
3. The kinds of sentences available;
4. The Guidelines range;
5. Relevant policy statements;
6. The need to avoid unwarranted sentence disparities; and
7. The need to provide restitution to victims.

*See* 18 U.S.C. § 3553(a).

Here, Mr. Nelson has accepted responsibility for his admittedly abhorrent conduct by pleading guilty to a crime which carries a 15-year mandatory minimum prison sentence.  He had a traumatic childhood and has led a difficult life, but he is still only 28 years old and, with treatment programs available through the Bureau of Prisons, he is committed to turning his life around.  A 15-year prison sentence, while severe, meets the penological purposes of § 3553(a), and is sufficient but not greater than necessary to comply with the statute.

Further, a 15-year sentence is reasonable and falls within the properly-calculated and agreed-to Sentencing Guidelines – the parties stipulated that the Total Offense Level is 35, within which 180 months falls.  The Court should not increase the Total Offense Level to 40 pursuant to USSG

§4B1.5(b)(1) because the offense conduct – a single, continuous Internet chat with a single victim during which the victim sent to Mr. Nelson two images of her genitalia – does not constitute a "pattern of activity involving prohibited sexual conduct." Notably, where, as here, a sentencing enhancement has a disproportionate impact on the length of the sentence, the Court should apply a heightened standard of proof in determining whether the enhancement is appropriate. *See Hymas*, *supra*, 780 F.3d at 1289-90. Whether a particular enhancement or offense level increase has a disproportionate impact on a sentence is based upon the totality of circumstances, and the Court may consider the six factors set forth in *United States v. Valensia*, 222 F.3d 1173 (9th Cir. 2000) in making its determination: (1) whether the enhanced sentence falls within the maximum sentence for the crime alleged in the indictment; (2) whether the enhanced sentence negates the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment; (3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increase in sentence is based on the extent of a conspiracy; (5) whether an increase in the number of offense levels is less than or equal to four; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence.

Here, the §4B1.5(b)(1) increase triggers several of the *Valensia* factors. The enhanced sentence results in a Guidelines range of 292 to 365 months, whereas the statutory maximum prison sentence for a violation of § 2251(a) is 30 years, or 360 months. The facts offered in the support of the enhancement do fundamentally create a new and separate offense – the increase is justified only by a "pattern of activity" rather than by a single violation, which is what Mr. Nelson has pled guilty to. Obviously, the five-level §4B1.5(b)(1) increase results in an increase in offense levels greater than four. Finally, the length of the enhanced sentencing range does roughly double the Guidelines range – the sentencing range for Offense Level 35 is 168 to 210 months (the offense level stipulated to by the parties), and for Offense Level 40 is 292 to 365 months. The government has agreed to ask this Court for 180 months, or 15 years, and the Guidelines range for Offense Level 40 includes a sentencing range of more than double that figure. The

five-level increase pursuant to §4B1.5(b)(1) is not supported even by a preponderance of evidence, and it certainly is not supported by clear and convincing evidence as required by *Hymas* and other Ninth Circuit precedent cited here.

Finally a 15-year prison sentence does not preclude the payment of restitution to the victims in this case.  Mr. Nelson recognizes that he has caused serious and potentially irreversible harm to the victim in this case, and he does not object to payment of restitution as recommended in the PSR.  A sentence within the Guidelines range stipulated to by the parties plainly meets the sentencing purposes set forth in § 3553(a).  Although harsh, it is a fair and reasonable sentence for a very serious crime.

### III.   Conclusion

Mr. Nelson respectfully requests that the Court sentence him to 180 months in prison, and that it recommend placement in a Bureau of Prisons facility close to Northern California that has available to its inmates both sex offender treatment programs and the Residential Drug Abuse Treatment Program.

Dated: September 23, 2021                                NOLAN BARTON & OLMOS, LLP


   /s/ Daniel B. Olmos
  Daniel B. Olmos
  Attorney for Defendant Tyler Shayne Nelson